IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Leeanna Morgan, <br> and on behalf of those <br> similarly situated, <br>    Plaintiff, <br> vs. <br>  <br> Andrews & Cox, PC DBA <br> Brodey,Bleeker,and <br> Andrews; Medley Serves <br> & Investigations, LLC, <br>    Defendants. | Civil Action No. _____ <br>  <br> CLASS ACTION COMPLAINT <br>  <br> (JURY TRIAL DEMANDED) |

**PARTIES**

1. Plaintiff, Leeanna Morgan is a citizen and resident of the state South Carolina, County of Greenville.

2. Defendant Andrews & Cox, PC d/b/a Bleeker, Brodey & Andrews is a professional corporation organized under the laws of Indiana and whose principle place of business is in Indianapolis, Indiana.

3. Defendant Medley Serves & Investigations, LLC is a limited liability corporation organized under the laws of Tennessee and whose principle place of business is in Knoxville, Tennessee.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction pursuant to 28 U.S.C. §1331. This action is brought under the Federal Debt Collection

Practices Act.

6. Jurisdiction is also conferred in this case by 15 U.S.C. § 1692k(d)

7. This Court has Jurisdiction over all Defendants because each Defendant has endeavored to collect debts within the state of South Carolina an this action arises out of those attempts to collect debts in the state of South Carolina.

8. All of these Defendants use the instrumentalities of interstate commerce, to include the mails, interstate phone calls, and interstate roadways, to collect debts in the state of South Carolina and others.

9. Andrews & Cox PC dba Brodey, Bleeker, and Andrews' actions are signed by one Christopher John Neeson, an attorney licensed in South Carolina and employed in Indianapolis by Andrews & Cox.

10. Defendant Medley Serves & Investigations is based in Tennessee and routinely serves process within the state of South Carolina on behalf of various attorneys and this actions arises out of those transactions. It routinely sends individuals, by interstate roadways, into the state of South Carolina from Tennessee.

11. All Defendants have sufficient minimum contacts with South Carolina as to render the exercise of jurisdiction by the South Carolina Courts permissible under traditional notions of fair play and substantial justice S.C. Code Ann.§ 36-2-803(A)(1),

(A)(3), and (A)(7).

12. Venue in this court is proper pursuant to 28 U.S.C.§ 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this district.

13. Jurisdiction and venue are proper as the unfair debt collection practices occurred within the state of South Carolina.

## CLASS ALLEGATIONS

14. The preceding paragraphs are incorporated by reference as fully set fourth herein.

15. Plaintiff asserts the allegations raised herein on behalf of herself and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, as representative of a class of persons similarly situated. The class is defined as followed:

> All those individuals on whom service has been attempted with process by Medley Serves & Investigations for the collection of a debt within the past one year whose experience with Defendants includes an unfair debt collection practice as defined within 15 U.S.C. § 1692 *et.seq.*

16. While the exact number of class members is presently unknown to the Plaintiff, class membership is ascertainable based upon records maintained by the Defendants. Upon information and belief, Plaintiff contends that the class includes more than forty-one individuals. As such the class is so numerous that joiner of all members in a single proceeding is impracticable.

17. The claims of the named Plaintiff are typical of the

claims of the class members generally. Plaintiff and other class members have suffered the same categories of damages from the abuse and harassment by the Defendants. All have suffered the same outrageous misstatements made by the Defendants. All have suffered the same threats of legal action and implications of illegal conduct at the hands of the Defendants.

18. There exist questions of law and fact common to members. Without limitation, these common question include:

    a. Were door tags used to effectuate service?

    b. Was the use of a door tag to collect a debt stuck to a door an unusual place inconvenient to the debtor?

    c. Did the door tags contain the seal of the South Carolina Supreme Court?

    d. Did the door tag contain misstatements of South Carolina Law?

    e. Were those misstatements material?

    f. Was the use of the seal a representation or implication that the debt collector was vouched for, bonded by, or affiliated with the Government of South Carolina?

    g. Was the description of "civil warrant" in the door tag a representation or implication that non payment of the debt or refusal to except service would lead to arrest or imprisonment?

    h. Was the use S.C. Code Ann.§ 16-9-320(a-b) a threat to take action that could not be legally undertaken?

i. Was the use of the South Carolina code section a representation or implication that non-payment of the debt or refusal to except service would lead to arrest or imprisonment?

j. Did the door tag, taken as a whole, suggest that the consumer had committed any crime or other conduct in order to disgrace the consumer?

k. Did the door tag, taken as a whole, amount to a written document which simulates or falsely represents that it is a document authorized by a court or official of any state or did it create a false impression as to its source authorization or approval?

l. Did the door tag, taken as a whole, amount to a form that created a false belief in consumers that a person of other than the creditor was participating in the collection of or attempt to collect the debt, when in fact no such person was so participating?

m. Whether the door tag or other communications were in violation of section 1692 d(1)

n. Was the language used alleging the potential criminal liability language the natural consequence of which was to abuse the reader or hearer?

o. Did the conduct of the Defendants have the natural consequence of harassing, oppressing or abusing the plaintiffs in this case?

p. Whether Defendant Medley Serves & Investigations was

an agent of the other Defendants?

      q. Whether an injunction against the Defendants is necessary and proper?

      r. Whether Plaintiff and class members have been damaged, and if so, are eligible for and entitled to compensatory and punitive damages?

      s. The nature and extent of damages and other remedies owed to class members by virtue of Defendant's conduct; and

      t. Whether this Honorable Court can enter declaratory, injunctive, or other equitable relief.

19. Plaintiff will protect fairly and adequately the interest of the class he or she seeks to represent. The interests of the Plaintiff are coincident with, and not antagonistic to, those of the proposed class. Plaintiff's counsel is experienced and competent in the prosecution of complex class litigation.

20. Certification pursuant to Fed.R.Civ.P. 23(b)(2) is proper for the class defined above because the maintenance of separate actions by individual members of the class would create a risk of varying adjudications with respect to interpretations of uniform policy terms and obligations that would establish incompatible standards of conduct for the Defendants as the parties opposing class. Furthermore, certification under Fed.R.Civ.p.23(b)(2) is proper because adjudications with respect to individual class members would, as a practical matter, be dispositive of the interest of other class members not a party to

the adjudications or would substantially impair or impede their abilities to protect their interest. In addition, the Defendants, as the parties opposing the class, have acted or refused to act on grounds generally applicable to the class thereby making relief appropriate with respect to the class as a whole.

21. While Plaintiffs specifically state that certification to Fed.R.Civ. 23(b)(2) is proper by itself for this entire action because monetary damages in the form of restitution is merely incidental to the declaratory and injunctive relief sought, Plaintiffs alternatively allege that certification of the class defined above is likewise proper under Fed.R.Civ.P. 23(b)(3). Specifically, common issues of fact and law as set forth above predominate over any individual issues that may exist. Furthermore, a class action is superior to other available methods for a fair and efficient adjudication of this action as a class. The interest of judicial economy favor adjudication of the claims alleged herein on a class basis and adjudication of this action as a class is properly manageable. The interest of judicial economy favor adjudication of the claims alleged hereon on a class basis rather than an individual basis, especially where, as here, the amount of damages for each claim are small compared to the burden and expense that would be incurred if each claim was litigated individually.

22. The Defendants have acted on grounds generally applicable to the class by engaging in unfair debt collection

practices as will be set forth below. For this reason Plaintiff, on behalf of herself and all other similar situated, asks that Defendants be enjoined from continuing their unfair debt collections practices and that Defendants be ordered to pay the statutory and individual damages in addition to costs and attorneys fees as required by the Act.

## **FACTUAL ALLEGATIONS**

23. Preceding paragraphs 1 through 22 are incorporated by reference herein as if set forth fully.

24. At some point, Defendant Medley Serves & Investigations, LLC began serving process in the State of South Carolina.

25. In effectuating that service for various Defendants, to include Andrews & Cox, Medley Serves began to resort to placing hangers on doors.

26. Those hangers ("door tags") bore the Seal of the Supreme Court of South Carolina.

27. The door tags are of approximately the same size as a post card. Further they were not placed in an envelope when taped to the door. Rather, they were placed in plain view on the door such that any neighbor or passerby could clearly discern the contents of the door hanger. The contents included that someone was attempting to serve process on the debtor and, in some cases, that that process was a "civil warrant." Onlookers could also

discern the threat of legal action and/or the implication that the debtor had committed some kind of illegal conduct.

28. The door tag also included a reference to an alleged South Carolina statute, South Carolina Code Ann. § 16-9-320. It stated that "it is an offense for a person to intentionally prevent or obstruct... any other person known to be a civil process server in serving, or attempting to serve or execute, any legal writ or process." (Exhibit A). This is a misstatement of South Carolina Code Ann.§ 16-9-320.

29. S.C. Code Ann. § 16-9-320 is expressly limited to "a law enforcement officer."

30. The South Carolina Code is published on the South Carolina State Legislatures's website and is publically available in libraries across the state.

31. The door tag goes on to claim that "a violation of this section is a class b misdemeanor unless the Defendant uses a deadly weapon to resist the stop, frisk, halt, arrest, search or process server, in which event the violation is a class a misdemeanor." This language appears no where in the South Carolina Code.

32. The mentions of class A and class B misdemeanors do not align with the explanation in South Carolina Code Ann.§ 16-1-20, in which a class B misdemeanor is punishable by no more than two years and a class A misdemeanor is punishable by no more than three years.

33. Section 16-9-320 (a) is a class C misdemeanor in the State of South Carolina. Section 16-9-320 (b) is a class E felony in the State of South Carolina.

34. All of those punishments apply only to resisting a law enforcement officer's lawful duties in serving process, certainly not any of Medley Serves & Investigations's agents.

35. The door tag fraudulently claims that the debtor has a court date. Court dates are not assigned until after the service of the summons and complaint.

36. The door tag goes on to claim "avoiding this will not extend the time that you have to respond to this action."

37. That, too, is a misstatement of the law. A Defendant in a civil case has thirty days from the date of service to respond to a complaint.

38. The door tag claims that "further delay may cause additional costs and/or legal action without your knowledge."

39. This too is a misstatement of the law. There cannot be any legal action undertaken until service is effectuated. All service could theoretically be effectuated by publication, but that could only occur after Medley Serves & Investigations has completed reasonable efforts to personally serve the debtor.

40. The door tag claims that it is in reference to a "civil warrant." There is no civil warrant in the debt collection context.

41. The door tag also includes a claim that documents may be

served at an inconvenient time or served at the debtors place of employment. And that it is the Debtors responsibility to call to schedule service at a time convenient for the debtor.

42. The door tag concludes by asking the Debtor to contact an individual in order to schedule a time for service.

43. On April 20,2023, an order to cease and desist was issued to Medley Serves & Investigations under case number 2023-000308 by the Chief Justice of the South Carolina Supreme Court. That order contained several findings.

44. The Chief Justice Beatty found that the "door tags were deceptive, they misstated the law in South Carolina, and they appeared to be designed to intimidate, harass, and threaten persons who may be subject to the service of the civil summons and complaint as Defendants."

45. Chief Justice Beatty went on to find that the use of the Seal of the Supreme Court was improper. That the use of the Seal of the Supreme Court of South Carolina suggested to consumers that their debts were being considered in the Supreme Court despite the fact that there is no case pending in the Supreme Court against any of these debt collection Defendants.

46. Chief Justice Beatty further found that the "door tags contained false, misleading, and incorrect information of the law of the State of South Carolina, the consequences of non service, and the legal effect of the actions for which services attempted."

47. The order finds that "the door tags incorrectly stated the law of South Carolina with respect to service of process by private processor." The analysis of S.C. Code § 16-9-320 is laid out above.

48. The Chief Justice found that the language misstated "penalties that might be applicable for resisting service."

49. Chief Justice found that the "language was misleading and designed to intimidate Defendants with threats of arrest and prosecution if they did not contact Medley Process Servers and agreed to receive process." He went on to find that "these misstatements of the criminal law are enhanced by misstatements about the nature of the actions contained in other language in the door tags."

50. The Chief Justice went on to discuss the civil warrant language in the door tag and found this "reference to a civil warrant is clearly designed to be misleading and to intimidate Defendants, particularly when combined with other misleading language in the door tags."

51. Chief Justice went on to point out that under the South Carolina Rules of Civil Procedure an action is commenced with a summons and complaint is filed if the Defendant is properly served, that Defendants are not assigned court date prior to being served with the summons and complaint in civil cases in South Carolina, and that no response would be due by any of the Defendants until they were properly served with the summons and

complaint under Rule 4, SCRCP.

52. He found that the statements to the contrary contained in the door tags were "assertions that are patently false and designed to mislead and intimidate Defendants."

53. He then found that the "language indicating the failure to respond might increase any legal fees such as interest on the debt, or result in a process server attempting service at a Defendant place of employment may not be legally incorrect", but that, "in combination with the other false and misleading statements", he found "this language is misleading and intended to intimidate Defendants."

54. The Defendants Andrews & Cox used Medley Servers and Investigations as an agent in order to collect a debt on behalf of another.

55. Both Defendants Andrews &Cox were debt collectors within the definition of 15 U.S.C. § 1662(a), as was defendant Medley Serves & Investigations. The Defendants conduct in this case violated 15 U.S.C. § 1692(e); to include but not limited by 15 U.S.C. §1692 e (1), (4), (5), (7), (9),(10),(11);15 U.S.C. § 1692f, to include but not limited to (7); 15 U.S. Code § 1692j; 15 U.S.C. § 1692d, to include but not limited to (1)and (2).

## **PLAINTIFF ALLEGATIONS**

56. Plaintiff, Leeanna Morgan lives in Greenville County, South Carolina. She had recently moved when Medley Serves & Investigations endeavored to serve her process.

57. Medley left a door tag on the door of Plaintiff's old address.

58. Ted Thomas, acting as an agent for Medley Serves & Investigations, then attempted service on February 6,2023 at 3:16 pm and left a door tag on the correct address. He left another door tag on February 20, 2023 and a third door tag on February 21,2023. A copy of the February 6 door tag is attached as Exhibit A. The Affidavit of Non Service in which he admits these actions is attached as Exhibit B.

59. After finding the February 6th door tag on her door, Plaintiff called Mr. Thomas to inquire as to why the tag had been left on her door. He told her that he was an officer who needed to serve her with something.

60. Upon information and belief, Ted Thomas is not an officer anywhere in the state of South Carolina. Claiming that he is an officer is a violation of S.C. Code Ann.§ 16-17-720, which makes it a class C misdemeanor to impersonate a duly authorized Law Enforcement Officer "or act in accordance with the authority commonly given to such officers."

61. She told him that he would have a hard time serving her at her home but that they could serve her at her place of business. He apparently refused to do that.

62. Rather, he continued to stick door tags in the space between the door and its jam and attach them to the door with a piece of scotch tape.

63. Plaintiff felt abused and harassed by the door tag.

### FOR A FIRST CAUSE OF ACTION

64. Plaintiff re-alleges and incorporates the preceding allegations 1 through 66 as if set forth fully herein.

65. The named Defendants are "debt collectors" within the meaning of 15 U.S.C. § 1692 a(6)

66. Debtors Andrews & Cox employed a Tennessee process server who used interstate commerce in order to endeavor to serve summons and complaints on Debtors within the State of South Carolina.

67. Defendant Medley Serves & Investigations employed the door tag discussed above in violation of the statutes previously enumerated.

68. As a consequence Plaintiff and the putative class have suffered damages.

69. Plaintiff class would also assert that it is entitled to all the damages allowed under 15 U.S.C. § 1692 k(a)to include reasonable attorneys fees, costs, actual damages of each class member, plus One Thousand ($1,000.00) Dollars for each named Plaintiff, and up to Five Hundred Thousand ($500,000.00) Dollars or one (1%) percent of each debt collectors networth.

### FOR A SECOND CAUSE OF ACTION

### DECLARATORY RELIEF

70. Plaintiff re-allege and incorporate the preceding allegations in paragraphs 1 through 72 of this complaint as if

set forth fully herein.

71. This cause of action is brought pursuant to Federal Uniform Declaratory Judgement Act,§ 28 U.S.C. § 2201 *et.seq* in the South Carolina Uniform Declaratory Judgement Act, s.c. code ann. § 15-53-10 *et.seq.*

72. A justiciable controversy exists by and among the parties in which the parties have a legal and actual interest which is ripe for resolution.

73. The Plaintiff and the class seek a declaratory judgement declaring that the Defendants in this litigation were participating in unfair debt collection practices.

## FOR A THIRD CAUSE OF ACTION

### INJUNCTIVE RELIEF

74. Plaintiff re-allege and incorporate the preceding allegations 1 through 76 as if set forth full herein.

75. Plaintiff is informed and believes that the class will suffer harm and actual damage to the extent that the Defendants are allowed to continue acting in the ways discussed in this complaint.

76. Plaintiff is therefore informed and believes that she and the class are entitled to temporary and permanent injunctions granting the relief sought herein above pursuant to FRCP Rule 65.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully request the following relief against Defendants, jointly and severally:

1. That this Court certify the class defined in Plaintiff's complaint;

2. That this Court appoint Plaintiff as representative of the class;

3. That this Court appoint Knie & Shealy Law Offices lead counsel for the class;

4. That this Court find and declare that Defendants engaged in unfair debt collection practices in violation of 15 U.S.C. § 1692;

5. That this Court issue an immediate temporary and permanent injunction enjoining the Defendants in this case from engaging in the acts and practices of which Plaintiffs complain in South Carolina;

6. And award on behalf of Plaintiff and punitive class members against the Defendants, jointly and severally, of actual damages, statutory damages, costs, and attorneys fees, and such other items as may be allowed to the maximum extent permitted by law.

*\*\*\*Signature Page to Follow\*\*\**

KNIE & SHEALY

/s/ Patrick E. Knie
_____
Patrick E. Knie
pat@knieshealy.com
Federal I.D. No. 2370
Matthew W. Shealy
matt@knieshealy.com
Federal I.D. No. 12823
S.C. Bar No. 77724
P.O. Box 5159
250 Magnolia Street
Spartanburg, S.C.  29304
Telephone No. (864) 582-5118
Telefax No.   (864) 585-1615

ATTORNEYS FOR PLAINTIFF

May 1, 2023